Submitted December 20, 2010, affirmed February 23, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CURTIS DEAN WHITLOW,
*Defendant-Appellant.*

Yamhill County Circuit Court
MI080971; A142376

250 P3d 24

Peter Gartlan, Chief Defender, and Mary M. Reese, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Gillette, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from his conviction for misdemeanor driving while suspended or revoked, ORS 811.182(4), arguing that the trial court erred in denying his motion to suppress evidence purportedly obtained through a violation of his rights under Article I, section 9, of the Oregon Constitution.[1] We affirm.

We take the facts from our review of the record and, where the trial court made findings of fact, we are bound by those findings to the extent that they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 135, 806 P2d 92 (1991). On a foggy and rainy October afternoon, Deputy Broyles was on patrol in his police car when he saw a red pickup truck, followed by a white motor home, coming towards him. Broyles saw the red pickup cross the center line, and he decided to enter the truck's license plate information into his mobile data terminal. By doing so, Broyles learned that the registered owner of the truck, defendant, had a suspended license. As the red truck passed him, Broyles was not able to see who the occupants were because of the rain and fog. Broyles turned his police car around and pulled the red pickup over.

Broyles could not see who was driving the truck after he had pulled it over, because there was a "four wheeler" in the bed of the truck, blocking the rear window. When he reached the driver's side window of the pickup, Broyles noticed that both the driver and passenger were women; defendant is male. Broyles recognized the passenger, M, and asked her "where [defendant] was." Both M and the driver pointed down the road in the direction of the white motor home. Broyles asked M "if [defendant] was driving the motor home," and she said "yes." Broyles told the women that he was leaving to catch up with the motor home and stop it, and

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

that they were to follow him to the same location. The stop of the truck lasted approximately 60 to 90 seconds.

Broyles returned to his police car, caught up with the white motor home, and pulled it over. Broyles walked up to the driver's side window and asked the driver "if he was [defendant], and he said he was." Broyles cited defendant for driving while suspended and released him. Broyles released the motor home to the women, who had followed him to the traffic stop in defendant's pickup.

Defendant moved to suppress the women's statements, arguing that Broyles unlawfully extended the duration of the traffic stop when he asked the occupants of the truck where defendant was. Defendant asserted that, because he had a constitutionally protected possessory interest in his truck, Broyles violated that interest by questioning the occupants after observing that defendant was not the driver of the truck. At that point, defendant argued, Broyles no longer had a reasonable suspicion that defendant was driving with a suspended license and, thus, the fact Broyles learned from questioning the occupants—that defendant was driving the motor home—was the product of an unlawful extension of the traffic stop.

The trial court denied defendant's motion, explaining that

"I am finding that the stop of the vehicle was appropriate under the case law. I find the discussion with the parties did not constitute an unreasonable seizure of the vehicle or an unlawful extension of that beyond a reasonable period of time.

"And I am also finding that even if that had occurred, asking the questions of the passengers as to where the defendant was, was not a violation of the rights of the Defendant.

"And even if it was an inappropriate seizure of the vehicle, it did not constitute a violation of the defendant's right and does not invalidate the arrest of the defendant based on that information."

Defendant entered a conditional guilty plea; this appeal followed.

■ Defendant renews his arguments on appeal, asserting that, under *State v. Juarez-Godinez*, 326 Or 1, 942 P2d

772 (1997), and *State v. Smith*, 327 Or 366, 963 P2d 642 (1999), the fact that he was not personally driving the truck when Broyles stopped it is "constitutionally insignificant," because defendant retained a possessory interest in the truck. Thus, defendant reasons, Broyles's questioning of the occupants impermissibly extended the duration of the traffic stop, and the information that Broyles obtained from the occupants was the product of that illegal extension and should have been suppressed. The state replies that, regardless of whether defendant's possessory interest in the truck is cognizable under Article I, section 9, Broyles did not significantly interfere with that possessory interest.

■       "Property is 'seized' for purposes of Article I, section 9, when there is a significant interference, even a temporary one, with a person's possessory or ownership interests in the property." *Juarez-Godinez*, 326 Or at 6. In *Juarez-Godinez*, the defendant had been arrested after a traffic stop; his two passengers had not been arrested. "As a consequence of that arrest," the court explained, "defendant was unable to drive the car away himself. Still, he retained a possessory interest in the car and, in normal circumstances, could have transferred possession of it to one of his passengers and directed that it be driven away." *Id.* at 7. The court held that the defendant's possessory interest had been significantly interfered with, particularly because the officer had requested the defendant's consent to a search of the car and had been refused, and after the defendant had refused, the officer had told him that another officer and a drug dog were coming to search the car. The court concluded that "[the officer's] statements were *and* reasonably could have been interpreted as curtailing, by a show of authority, defendant's rights to transfer possession of, and direct the movements of, the car." *Id.* at 8 (emphasis in original).

In *Smith*, police officers had received a tip that a storage unit was being used to store marijuana harvested from an illegal growing operation. 327 Or at 368. The manager of the storage unit would not permit police officers to search the unit without a warrant and, after a drug dog positively alerted to the exterior of the storage unit, the police officers asked the manager to padlock the unit's door. The manager did so. *Id.* at 369. The officers later returned with a warrant, searched the unit, and found marijuana. *Id.*

The defendant argued that his Article I, section 9, possessory interest in the storage unit was violated when the police, acting through the unit manager, padlocked the unit. The court agreed, holding that "[p]adlocking the unit represented significant interference with respect to the unit. At least in theory, it deprived defendant of the use of the unit and access to its contents." *Id.* at 376. The court elaborated:

> "Neither do we agree with the state's suggestion that the seizure was constitutionally insignificant because defendant was in jail and in no position to exercise his possessory rights in the storage unit. The fact that one cannot *personally* exercise one's possessory rights does not preclude a conclusion that such rights have been violated. *See, e.g.,* [*State v.*] *Juarez-Godinez*, 326 Or at 8, 942 P2d 772 (seizure of car violated driver's right against unreasonable search and seizure even though driver was under arrest and unable to drive it)."

*Smith*, 327 Or at 377 n 7 (emphasis in original).

As noted, defendant distills from *Juarez-Godinez* and *Smith* the proposition that, "because [he] owned the truck, [defendant] retained all rights against its unreasonable search or seizure by the state, no matter where he was and no matter who else had permission to drive his truck." We need not determine the precise extent of defendant's possessory interest in his truck because, whatever that interest may have been, Broyles did not significantly interfere with it. Unlike in *Juarez-Godinez*, where the defendant's car was detained for nearly an hour after a traffic stop, defendant's truck in this case was pulled over for approximately 60 to 90 seconds, and Broyles's brief questions of its occupants did not curtail defendant's "rights to transfer possession of, and direct the movements of, the car." *Juarez-Godinez*, 326 Or at 8. And, unlike in *Smith*, where the defendant's property was padlocked, here defendant's property remained under the control of the occupants whom defendant had allowed to use the truck. Accordingly, no violation of defendant's Article I, section 9, rights occurred, and the trial court correctly denied defendant's motion to suppress the challenged statements.

Affirmed.